## UNITED STATES v. WOOD.
### No. A–5565.

District Court, N. D. West Virginia.
Jan. 12, 1945.

Ezra E. Hamstead, Asst. U. S. Atty., of Morgantown, W. Va., for the United States.

Frank A. O'Brien, of Wheeling, W. Va., for the defendant.

BAKER, District Judge.

An indictment was returned against William Oliver Wood, hereinafter called the "defendant," charging that on or about the 25th day of August, 1944, he "did unlawfully, wilfully, knowingly, and feloniously, with unlawful and fraudulent intent, cause to be transported in interstate commerce from Wheeling, in the County of Ohio, in the State of West Virginia, in the Northern District of said State, and within the jurisdiction of this Court, to Detroit, in the State of Michigan, a falsely made, forged and counterfeited security, to-wit, a check dated August 25, 1944, drawn on the Industrial National Bank, Detroit, Michigan, in the amount of $20.00, payable to the order of Hotel Windsor, and signed by W. O. Wood." A photostatic copy of the face and reverse side of said check was attached to and made a part of the said indictment.

The second count charges the defendant, in similar language, with causing to be transported from the State of West Virginia to Detroit, in the State of Michigan, a check dated August 26, 1944, payable to the order of Cash, and signed by said defendant. Photostatic copies of the face and reverse side of the second check were also attached to and made a part of the indictment.

The defendant, by counsel, moved for a bill of particulars, and the Court directed the Government to file such bill of particulars. This was done. The defendant then demurred to the indictment as enlarged by the bill of particulars. It is this demurrer which is now before the Court.

The facts, as shown by the bill of particulars, are that the defendant cashed two checks at the Hotel Windsor, in Wheeling, West Virginia, on the dates and in the amounts alleged in the indictment. Both checks were drawn on the Industrial National Bank at Detroit, Michigan. At the time of cashing the checks, the defendant did not have sufficient funds on deposit in said bank to meet the same. These checks were deposited by the Hotel Windsor in the National Bank of West Virginia at Wheeling, and were later, in due course of banking business, sent by mail to the Industrial National Bank, at Detroit, Michigan, where payment was refused. These checks were written and signed in Wheeling, West Virginia, immediately before their delivery to the Hotel Windsor. The bill of particulars states that at the time of the execution and delivery of these checks the defendant knew that he did not have any funds in the Industrial National Bank, at Detroit, Michigan. While this is probably an inference, I will treat it, for the purpose of this ruling, as a fact in the case.

The indictment does not charge the use of the mails to defraud, but is drawn under 18 U.S.C.A. 415. This section makes three distinct kinds of transaction an offense. The first part of the section makes it an offense to transport in interstate commerce any goods, wares, merchandise, security, or money, of the value of $5,000 or more, which had theretofore been stolen or taken in any illegal manner. This portion of the Statute obviously has no application to the instant case. The final portion of the Statute makes it an offense to transport in interstate commerce any mechanical device designed or adapted for use in counterfeiting. This portion of the Statute also obviously does not cover the present indictment. This leaves the third or middle portion of the Statute, which reads: "or whoever with unlawful or fraudulent in-

tent shall transport or cause to be transported in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited."

No case has been cited, nor have I been able to find any case directly in point, and counsel for the Government, in oral argument, stated that this is the first time the question has been presented to a Court. Boiled down to its simplest terms this question is, does the cashing of a bad check, drawn upon a bank in another State, constitute a violation of the Statute? An analogous question, involving an indictment for use of the mails to defraud, was presented in the case of Kann v. United States, 65 S.Ct. 148. This case holds that the mere clearing through the mails of checks, representing the proceeds of a fraudulent scheme, after they have been cashed and are in the hands of a holder in due course, is not a part of the execution of the scheme to defraud so as to sustain a prosecution for using the mails to defraud.

It is my opinion that by analogy the cashing of a bad check, even under circumstances which strongly indicate that the check will eventually be sent in interstate commerce, is not an offense under the Statute concerned here, and on the authority of the Kann case, I feel that the demurrer to the indictment and bill of particulars should be sustained.

It also seems to me, even without a decision from our highest Court that Congress never intended, when it enacted the Statute in question, to make the Federal Judiciary a collection agency for bad checks. The injured hotel has a complete and adequate remedy under the State criminal laws. Under the law of West Virginia there is nothing to prevent the Hotel Windsor from swearing out a warrant and causing the prosecution of the defendant here in the State tribunals. I can see no reason why the Federal Courts should be burdened with matters of this kind. If prosecutions of this nature were sustained, any person, giving a bad check upon a foreign bank, regardless of amount, whether for $1 or $5, would be subject to Federal prosecution, and the District Courts would be turned into police or justice of the peace courts, a course which I do not propose to adopt.

The Clerk is directed to enter an order sustaining the demurrer, and the defendant is herewith discharged from custody.