Weisman v. Blue Mountain Organics Distrib., LLC, 2014 NCBC 41.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF GUILFORD | 13 CVS 3490 |

ANNE L. WEISMAN,

        Plaintiff,

    v.

BLUE MOUNTAIN ORGANICS
DISTRIBUTION, LLC;
PATRICIA HOUCHIN; BLUE
MOUNTAIN ORGANICS, LLC;
BLUE MOUNTAIN HOLDINGS,
LLC; JARED MIZRAHI; STEPHANIE
WEISMAN; PETER HOUCHIN;
JOHN DOE; and JANE DOE,

        Defendants.

**ORDER AND OPINION**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

{1}    THIS MATTER is before the court on Defendants Blue Mountain Organics Distribution, LLC, Patricia Houchin, and Peter Houchin's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). For the reasons stated below, the Motion is GRANTED.

*Gordon Law Offices by Harry G. Gordon for Plaintiff.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP by John S. Buford for Defendants Blue Mountain Organics Distribution, LLC, Patricia Houchin, and Peter Houchin.*

Gale, Judge.

## I.    PROCEDURAL BACKGROUND

{2}    Plaintiff Anne L. Weisman ("Weisman") filed her Complaint on February 28, 2013. The case was designated a complex business case by Order dated September 30, 2013, and assigned to the undersigned on October 1, 2013.

Defendant Blue Mountain Organics Distribution, LLC ("BMOD") filed a motion to dismiss for lack of personal jurisdiction on September 26, 2013. On October 28, 2013, Defendants Patricia Houchin and Peter Houchin, joined by BMOD, filed the present Motion. BMOD restates the earlier motion when joining the present Motion. The Motion has been briefed, the court heard arguments on January 14, 2014, and the matter is ripe for disposition.

## II.     FACTUAL BACKGROUND

{3}     The trial court may decide a challenge to personal jurisdiction by considering competing affidavits submitted by the parties. *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005). Once a defendant submits an affidavit or evidence challenging personal jurisdiction, unverified allegations in a complaint conflicting with that evidence may no longer be taken as true. *Id.* at 693–94; 611 S.E.2d at 182–83. However, allegations in a complaint uncontroverted by an affidavit are still taken as true. *Id.* (citing *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 616, 532 S.E.2d 215, 218 (2000)); *see also Dailey v. Popma*, 191 N.C. App. 64, 69, 662 S.E.2d 12, 16 (2008). When affidavit testimony conflicts, the trial court "must determine the weight and sufficiency of the evidence" in making its findings of fact. *Banc of Am. Sec.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (quoting *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524 (1981) (internal quotation marks omitted)).

{4}     The Parties have submitted several competing affidavits. The court makes the following findings of fact solely for the purpose of this motion, based on those affidavits and uncontroverted allegations in the Amended Complaint.[1]

{5}     Plaintiff Anne L. Weisman is a North Carolina resident. (Am. Compl. ¶ 1.)

---

[1] Plaintiff moved to amend her complaint. The court granted that motion at the January 14, 2014, hearing and deems Plaintiff's proposed Amended Complaint, attached as an exhibit to Plaintiff's Motion to Amend, as Plaintiff's operative pleading with respect to Defendants BMOD, Peter Houchin, and Patricia Houchin.

{6}     Defendant BMOD is a limited liability company ("LLC") headquartered in and organized under the laws of Virginia. (Aff. of Peter Houchin ¶ 3.) BMOD was formed on August 25, 2011. (Aff. of Peter Houchin ¶ 2.) BMOD is not registered to do business in North Carolina, it owns no real or personal property in North Carolina, it has no bank accounts in North Carolina, nor has it, with the exception of this action, ever sued or been sued in North Carolina. (Aff. of Peter Houchin ¶¶ 5–8.) All of its employees work in Virginia, and none of them reside in North Carolina. (Aff. of Peter Houchin ¶ 4.)

{7}     Defendants Peter and Patricia Houchin are members and managers of BMOD. (Aff. of Peter Houchin ¶¶ 2, 10; Aff. of Patricia Houchin ¶¶ 2, 5.) They are Florida residents and have never been North Carolina residents. (Aff. of Peter Houchin ¶ 10; Aff. of Patricia Houchin ¶ 5.) They do not own any real or personal property in North Carolina, nor do they have any bank accounts in North Carolina. (Aff. of Peter Houchin ¶ 11; Aff. of Patricia Houchin ¶ 6.) They do not pay taxes or vote in North Carolina. (Aff. of Peter Houchin ¶ 11; Aff. of Patricia Houchin ¶ 6.) Mrs. Houchin has never traveled to North Carolina to conduct business on BMOD's behalf. (Aff. of Patricia Houchin ¶ 10.)

{8}     Defendant Blue Mountain Organics, LLC ("BMO") is an LLC organized under the laws of Virginia. (Amend. Compl. ¶ 6.)

{9}     Plaintiff filed a prior suit in Guilford County Superior Court against Defendants Stephanie Weisman, Jared Mizrahi ("Mizrahi"), and BMO. (Amend. Compl. ¶¶ 14–22; Aff. of Anne Weisman ¶ 33(a).) That case was resolved by court-ordered mediation on April 5, 2011. (Amend. Compl. ¶¶ 19–20; Aff. of Anne Weisman ¶ 33(b)–(e).)

{10}    During that mediation, Plaintiff and Defendants Stephanie Weisman, Mizrahi, and Tim Clontz ("Clontz"), acting on behalf of BMO, signed a settlement agreement. (Aff. of Anne Weisman ¶¶ 11, 33(b); Amend. Compl. ¶ 21(a), Ex. 1.) That settlement agreement was secured by a promissory note, a security agreement, and a pledge of share ownership interest in BMO. (Aff. of Anne Weisman ¶¶ 13, 33(b)–(j), Exs. 1–4; Amend. Compl. ¶ 21(a)–(d), Exs. 1–4.) Plaintiff

received a security interest in BMO's furniture, fixtures, and equipment, assignment of a promissory note executed by Mizrahi, and assignment of Mizrahi's interest in BMO. (Aff. of Anne Weisman ¶ 33(b)–(l).) BMOD was not a party to any of these agreements, and the company did not exist when the agreements were executed. (Aff. of Peter Houchin ¶ 12; Aff. of Patricia Houchin ¶ 7.)

{11} BMO experienced financial hardship in early 2011, had little cash on hand, and could not pay its bills on time. (Supplemental Aff. of Peter Houchin ¶¶ 3–4, 7.) During this time, Clontz and Mr. Houchin explored possible investments, restructurings, and other courses of action that could stabilize and return BMO to solvency. (Supplemental Aff. of Peter Houchin ¶¶ 9, 11–12.)

{12} In late August or early September 2011, Peter Houchin traveled to North Carolina with Clontz, BMO's former chief executive, to discuss Plaintiff's claims against BMO with Plaintiff's former attorney. (Aff. of Peter Houchin ¶ 17.) Mr. Houchin contends that BMOD had not yet contemplated the particular transaction whereby BMOD purchased some of BMO's assets, (Aff. of Peter Houchin ¶ 17; Supplemental Aff. of Peter Houchin ¶ 12,) and that he was serving either in an advising or consulting role to BMO or as a potential investor. (Supplemental Aff. of Peter Houchin ¶ 8.) Mr. Houchin denies negotiating at all during the meeting and maintains that he only provided his opinions on BMO's financial situation so that Clontz and the attorney could have a productive discussion regarding the debt that BMO owed to Plaintiff. (Supplemental Aff. of Peter Houchin ¶ 12.) Plaintiff contends that Mr. Houchin and Clontz attempted to "strong arm" her into settling the debt on unfavorable terms. (Aff. of Anne Weisman ¶ 33(aa).)

{13} On September 29, 2011, BMOD agreed to purchase assets from BMO. (Aff. of Peter Houchin ¶ 13.) That transaction closed on October 3, 2011, and BMO sold and transferred most of its assets to BMOD. (Aff. of Peter Houchin ¶ 13; Aff. of Anne Weisman ¶ 33(cc)(xiii).) BMOD did not agree to assume any liabilities that BMO owed to Plaintiff. (Aff. of Peter Houchin ¶ 13.) BMOD also did not purchase any of BMO's furniture, fixtures, or equipment in which Plaintiff had a security interest, and those assets remain in Virginia on BMO's former (and BMOD's

current) premises.  (Aff. of Peter Houchin ¶ 14; Supplemental Aff. of Peter Houchin ¶ 13.)[2]

{14}   There is no common ownership or management between BMO and BMOD.  (Supplemental Aff. of Peter Houchin ¶ 22.)  Neither Mr. Houchin nor Mrs. Houchin control or own any interest in BMO.  (Supplemental Aff. of Peter Houchin ¶ 25.)  Only 3.6% of BMOD's total sales revenue comes from sales to wholesale and retail customers within North Carolina.  (Aff. of Patricia Houchin ¶ 4.)

## III.   ANALYSIS

{15}   Once a defendant challenges personal jurisdiction, the plaintiff must establish by a preponderance of the evidence that the court may exercise personal jurisdiction over that defendant.  *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 723, 556 S.E.2d 592, 594 (2001); *see also Wyatt v. Walt Disney World Co.,* 151 N.C. App. 158, 162, 565 S.E.2d 705, 708 (2002).

{16}   The court must conduct a two-step analysis to determine whether the Houchins or BMOD are subject to personal jurisdiction in North Carolina.  First, the court must determine if the long-arm statute authorizes jurisdiction over them.  *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006).  If so, then the court must ensure that exercising personal jurisdiction comports with the Due Process Clause.  *Id.*

### A. Long-Arm Statute

{17}   Plaintiff claims that nearly every provision in the long-arm statute authorizes personal jurisdiction over BMOD and the Houchins.  The court therefore must address each section Plaintiff claims confers jurisdiction.

---

[2] Plaintiff claims BMOD also acquired BMO's furniture, fixtures, and equipment that secured Plaintiff's note.  (Aff. of Anne Weisman ¶ 35, Ex. 9.)  BMOD and the Houchins insist that BMO retains title to those assets and that they were not part of the transaction.

{18}     Section 1-75.4(3) provides for personal jurisdiction "[i]n any action claiming injury to person or property" in North Carolina "arising out of an act or omission within this State by the defendant." N.C. Gen. Stat. § 1-75.4(3).  Here, the asset transfer occurred within Virginia, between Virginia-based companies.  There is no evidence of an act local to North Carolina that caused harm to Plaintiff.  Thus, section 1-75.4(3) does not permit the court to exercise personal jurisdiction over BMOD or the Houchins.

{19}     Section 1-75.4(4)a provides for personal jurisdiction "in any action claiming injury to . . . property within [North Carolina] arising out of an act or omission outside [North Carolina] by the defendant" if, around the time of the plaintiff's claimed injury, the defendant or another on defendant's behalf engaged in "solicitation or services activities" within North Carolina.  N.C. Gen. Stat. § 1-75.4(4)a.  The Houchins did not engage in any "solicitation or services activities" within North Carolina.  Although BMOD engaged in limited "services activities" in North Carolina by virtue of its product sales to wholesalers, none of Plaintiff's claimed injuries can conceivably arise out of any of those activities.  Thus, this section of the long-arm statute does not provide a basis for the court to exercise jurisdiction over BMOD or the Houchins.

{20}     Section 1-75.4(5)(c) provides for personal jurisdiction "[i]n any action which . . . [a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within [North Carolina], or to ship from [North Carolina] goods, documents of title, or other things of value." N.C. Gen. Stat. § 1-75.4(5)(c).  "Essentially, this section of the long-arm statute reaches defendants who engage in commercial transactions with residents of this state." *Skinner*, 361 N.C. at 120, 638 S.E.2d at 209 (citing *Johnston Cnty. v. R.N. Rouse & Co.*, 331 N.C. 88, 95, 414 S.E.2d 30, 35 (1992)).  The claims against BMOD and the Houchins do not arise out any contract or commercial transaction with Weisman.  Thus, this section does not permit exercising personal jurisdiction over BMOD or the Houchins.

{21}    Section 1-75.4(6)(c) provides for personal jurisdiction in any action arising out of "[a] claim that the defendant return, restore, or account to the plaintiff for any asset or thing of value which was within this State at the time the defendant acquired possession or control over it."  N.C. Gen. Stat. § 1-75.4(6)(c). The property allegedly fraudulently conveyed to BMOD and the Houchins was located in Virginia, not North Carolina, so this section does not furnish a basis for exercising personal jurisdiction over BMOD or the Houchins.

{22}    Section 1-75.4(1)(d) provides for personal jurisdiction over nonresident defendants "engaged in substantial activity within" North Carolina, including wholly interstate activity, at the time "when service of process is made upon" the nonresident defendant.  *Id.* § 1-75.4(1)(d).  This provision grants courts "the full jurisdictional powers permissible under federal due process."  *Skinner*, 361 N.C. at 119, 638 S.E.2d at 208 (quoting *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)); *see also Rossetto USA, Inc. v. Greensky Fin., LLC*, 191 N.C. App. 196, 199, 662 S.E.2d 909, 912 (2008).  Thus, this provision of the long-arm statute is substantially coextensive with due process, and authorizes the court to exercise jurisdiction over BMOD and the Houchins if and only if doing so comports with due process.

B.  Due Process

{23}    A court does not obtain personal jurisdiction over a nonresident defendant unless the defendant has "certain minimal contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted)).  More specifically, the nonresident defendant must "purposefully avail[] himself of the privilege of conducting activities within the forum state."  *Evonik Energy Servs. GmbH v. Ebinger*, 212 N.C. App. 385, 389, 712 S.E.2d 690, 694 (2011) (citing *A.R. Haire, Inc. v. St. Denis*, 176 N.C.

App. 255, 259–60, 625 S.E.2d 894, 899 (2006)). The court must consider several factors to determine whether minimum contacts exist, "including: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *Id.* (citation omitted). There is no single controlling factor—the court must weigh all factors to "determine what is fair and reasonable and just to [all] parties." *Id.* (citation omitted).

{24} Personal jurisdiction over nonresident defendants is either general or specific. General jurisdiction exists when "the controversy is unrelated to the defendant's activities within the forum, but" the defendant "has . . . 'continuous and systematic contacts' with the forum state." *Wyatt*, 151 N.C. App. at 165, 168, 565 S.E.2d at 709, 711 (quoting *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754–58 (2014) (explaining constitutional limitations of general personal jurisdiction and affirming that "continuous and systematic contacts" must essentially render a corporation "at home" in a given state for general personal jurisdiction to attach); *Fraser v. Littlejohn*, 96 N.C. App. 377, 386 S.E.2d 230 (1989) (explaining *Helicopteros* and noting that general jurisdiction requires "substantial" contacts with forum). Specific jurisdiction exists when "the controversy in the case arises out of the defendant's contacts with the forum state." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 143, 515 S.E.2d 46, 49–50 (1999) (quoting *Helicopteros*, 466 U.S. at 414); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121–23 (2014) (explaining constitutional constraints on specific jurisdiction and noting that "the plaintiff cannot be the only link between the defendant and the forum"). Plaintiff contends that the court may exercise jurisdiction over BMOD or the Houchins under either theory.

1. General Jurisdiction

{25}    The court first examines general jurisdiction, which requires a "significantly higher" level of contacts with the forum state than specific jurisdiction. *Cambridge Homes of N.C., LP v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008) (citation omitted); *see also Daimler*, 134 S. Ct. 746, 761–62 (holding that the correct test for general personal jurisdiction "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'") (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Plaintiff argues that general jurisdiction exists over BMOD because it sells products to North Carolina retail and wholesale consumers.[3] However, BMOD, a relatively small company, received only 3.6% of its total sales volume from North Carolina, which is insufficient to support general jurisdiction over them. *See, e.g., Occidental Fire & Cas. Co. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 689 F. Supp. 564, 568 & n.1 (E.D.N.C. 1988) (finding no general jurisdiction existed when the defendant's loan activity in the forum state exceeded $100 million); *Ash v. Burnham Corp.*, 80 N.C. App. 459, 461–62, 343 S.E.2d 2, 3–4 (1986) (holding that the defendant's sales, comprising 0.5% of its total annual sales, was insufficient to support jurisdiction). Simply put, there is no reasonable basis for the court to conclude, or for Plaintiff to argue, that BMOD is "at home" in North Carolina. The court cannot exercise general personal jurisdiction over BMOD.

---

[3] The court is unable to discern whether Plaintiff argues general jurisdiction also exists over Peter or Patricia Houchin. Plaintiff has not produced evidence of any "continuous and systematic" contacts that the Houchins have with North Carolina. Moreover, the Houchins' status as members of BMOD does not, without more, subject them to personal jurisdiction. *See, e.g., Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610, 615 (2006). Finally, the Houchins are not North Carolina residents. The court cannot exercise general personal jurisdiction over them.

2.  <u>Specific Jurisdiction</u>

{26}    The court now considers whether specific jurisdiction exists over
BMOD or the Houchins, which requires to the court to analyze "the relationship
among [each] defendant, [North Carolina], and the cause of action." *Skinner*, 361
N.C. at 123, 638 S.E.2d at 210 (quoting *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d
at 786 (quotation marks omitted)).  For the court to exercise specific jurisdiction
over BMOD or the Houchins, the controversy must "arise[] out of the defendant's
contacts with the forum state." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786.

{27}    At the outset, the court notes that Plaintiff has not produced any
evidence that Patricia Houchin had any contacts with North Carolina that were
remotely related to any of the causes of action asserted against her.  Instead,
Plaintiff relies on conclusory allegations related to piercing BMOD's veil to impose
liability on Mrs. Houchin, one of its members.  Mrs. Houchin, through affidavit
testimony, has contradicted Plaintiff's conclusory allegations and insists that
BMOD adheres to corporate formalities.  Without any countervailing evidence from
Plaintiff, the court cannot exercise personal jurisdiction over Mrs. Houchin based
solely on her status as a member of BMOD.  *See State ex rel. Cooper v. Ridgeway
Brands Mfg., LLC*, 188 N.C. App. 302, 306, 655 S.E.2d 446, 449 (2008) (holding that
conclusory allegations concerning corporate veil piercing insufficient to subject
nonresident defendant to personal jurisdiction); *Robbins v. Ingham*, 179 N.C. App.
764, 771, 635 S.E.2d 610, 615 (2006) ("[P]ersonal jurisdiction over an individual
officer or employee [or shareholder] of a corporation may not be predicated merely
upon the corporate contacts with the forum.").

{28}    In *Saft America*, a case relied on heavily by Plaintiff, the nonresident
defendant's company "had a long-standing business relationship with" the plaintiff,
he was an officer of the corporate defendant, he had "visited North Carolina . . . in
connection with" that relationship, and he "was *personally involved in negotiating
and carrying out the contracts*" from which the lawsuit arose.  *Saft Am., Inc. v.
Plainview Batteries, Inc.*, 189 N.C. App. 579, 594 659 S.E.2d 39, 49 (2008)

(Arrowood, J., dissenting) (emphasis added), *rev'd for reasons stated in dissent*, 363 N.C. 5, 673 S.E.2d 864 (2009). Thus, the trial court improperly concluded that it could not exercise personal jurisdiction over him.

{29}  Here, the various claims asserted against BMOD and the Houchins arise principally out of allegedly fraudulent transfers of assets between BMO and BMOD. Although Plaintiff has brought a litany of claims against BMOD and the Houchins, the factual core of their claims only involves the asset transfer and the corresponding reduction in value of the property allegedly securing a promissory note executed in Plaintiff's favor. The physical property allegedly securing that note is and has always been in Virginia. Plaintiff's claimed membership interest in BMO is related more closely to Virginia, as BMO is a Virginia LLC. BMOD is a Virginia LLC with its principal place of business in Virginia. The allegedly fraudulent transfer of assets between BMO and BMOD took place in Virginia. Plaintiff's claims against BMOD and the Houchins essentially challenge that entire transaction, which occurred entirely in Virginia.

{30}  The only contact between Peter Houchin or BMOD (assuming Mr. Houchin was acting as BMOD's agent) and North Carolina was the single visit to Plaintiff's former attorney's office, which took place before BMOD was formed. The court does not conclude that this single visit, even though it concerned Plaintiff's claims in a former lawsuit against BMOD and others, is sufficient to warrant exercising personal jurisdiction over Mr. Houchin or BMOD in this action. It does not matter whether Mr. Houchin was there as a potential investor or as a corporate advisor.

{31}  Plaintiff also advances several alternate theories of personal jurisdiction over BMOD and the Houchins. These theories include successor liability, alter-ego liability, corporate veil piercing, and conspiracy liability.

{32}  First, Plaintiff, relying on cases from other jurisdictions, argues that principles of "successor liability" support exercising personal jurisdiction over Defendants. (Pl.'s Br. Opp'n Mot. Dismiss for Lack of Personal Jurisdiction 13 (citing *Crawford Harbor Assocs. v. Blake Constr. Co.*, 66 F. Supp. 880, 883 (E.D. Va.

1987)).)  Plaintiff has not cited, and the court has not found, any North Carolina case recognizing that "successor liability" warrants exercising personal jurisdiction over a nonresident defendant who otherwise lacks sufficient minimal contacts with North Carolina.  Even assuming that such a rule of law might be recognized, the facts of this case are insufficient to support exercising jurisdiction over Defendants on this theory through affirmation of that rule.

{33}    Next, Plaintiff claims that alter-ego liability or corporate veil-piercing theories support exercising personal jurisdiction over the Houchins and BMOD. Conclusory allegations concerning alter-ego liability or corporate veil piercing, without any other supporting evidence, cannot support exercising personal jurisdiction over a nonresident defendant.  *See, e.g.*, *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 306, 655 S.E.2d 446, 449 (2008). Exercising personal jurisdiction based solely on a defendant's status as an officer or agent of a corporation violates due process.  *Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610, 615 (2006); *see also Saft Am.*, 189 N.C. App. at 599, 659 S.E.2d at 52 ("[P]ersonal jurisdiction *cannot* be based solely on a defendant's employment status as the agent or officer of a company with ties to North Carolina, or on personal connections to North Carolina that fall short of the requisite 'minimum contacts.'").  Plaintiff's allegations concerning veil piercing are conclusory, nonspecific, and directly contradicted by sworn affidavit testimony.  Thus, the court cannot exercise personal jurisdiction over the Houchins or BMOD under these theories.

{34}    Finally, Plaintiff advances a "conspiracy theory" of personal jurisdiction.  Under that theory, "a conspirator who has a few contacts with a state may nonetheless be subject to the state's jurisdiction if substantial acts in furtherance of the conspiracy were performed in the state and the conspirator knew or should have known that these acts would be performed."  *Stetser v. Tap Pharm. Prods., Inc.*, 162 N.C. App. 518, 521, 591 S.E.2d 572, 575 (2004) (quoting *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1229 (M.D.N.C. 1988)).  However, as the court of appeals has observed, the North Carolina Supreme Court has never adopted a

conspiracy theory of personal jurisdiction. *Id.*; *see also Dailey v. Popma*, 191 N.C. App. 64, 73, 662 S.E.2d 12, 18 (2008) (stating that the plaintiffs failed to cite "any authority that a conspiracy with a North Carolina Resident is sufficient to establish minimum contacts"). This court declines any invitation to adopt the theory that appellate courts have not yet embraced, particularly because that invitation rests only on conclusory allegations with scant, if any, supporting evidence.

{35} In sum, the court concludes that due process does not permit it to exercise personal jurisdiction over Peter Houchin, Patricia Houchin, or BMOD.

## IV. CONCLUSION

{36} For the reasons stated above, Defendants' Motion to Dismiss is GRANTED and Defendants Peter Houchin, Patricia Houchin, and Blue Mountain Organics Distribution, LLC are HEREBY DISMISSED from this action.

IT IS SO ORDERED this 5th day of September, 2014.